UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANDRA GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-0255-B |
| | § | |
| MARY KAY, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Mary Kay, Inc.'s Motion for Summary Judgment (doc. 49). For the reasons stated below, the Court finds the Motion should be and hereby is **DENIED** (doc. 49).

## I.

## BACKGROUND[1]

This action arises from Plaintiff Sandra Garza's ("Garza") employment with Defendant Mary Kay, Inc. ("MKI"). Garza, a Hispanic female, was born on April 1, 1964. (Pl.'s Compl. And Jury Demand ¶ 7.) MKI employed Garza for a period of 18 years. (*Id.* at ¶ 6.) Over the course of her employment, Garza was awarded a number of promotions and ultimately worked in the Travel Accounting group within MKI's Finance Division.[2] (Def. Mary Kay, Inc.'s Mot. For Summ. J.

---

[1]The Court takes its factual account from those uncontested facts contained in the parties' papers and pleadings. Any contested fact is identified as the allegation of a particular party.

[2]According to MKI, the Finance Division includes the Financial Resources department which houses MKI's accounting functions. (Def. Mary Kay Inc.'s Mot. For Summ. J. 6.) The Travel Accounting Group is part of the Financial Resources department and is responsible for processing expenses of employees, including company credit cards and expense reports. (*Id.* at 7.)

- 1 -

("MKI's Mot.") 8; Pl.'s Resp. to Def.'s Mot. For Summ. J. and Br. In Supp. ("Pl.'s Resp.") 2.) In 2006, Garza was promoted to the position of Senior Travel Accounting Coordinator, the highest position level possible for a position not exempt from the Fair Labor Standards Act. (MKI's Mot. 9; Pl.'s Resp. 2.) In this position, Garza reported to direct supervisor Tammy Gray ("Gray"). (Pl.'s Compl. And Jury Demand ¶ 22.) Hoping to advance to an exempt, salaried position, Garza pursued and received her accounting degree in December 2007. (MKI's Mot. 9; Pl.'s Resp. 11-12.)

### A. Garza's Application for Various Exempt Positions

From May 2007 to March 2008, Garza applied for a number of exempt positions including Manufacturing ERP Analyst,[3] Travel Accounting Supervisor, and a Cost Accounting I position. ( Pl.'s Compl. And Jury Demand ¶¶ 9, 15, 33; MKI's Mot. 10, 14, 20.) Garza was not hired for these positions allegedly due to her perceived lack of accounting and supervisory experience. (Pl.'s Compl. And Jury Demand ¶¶ 10, 16, 34; MKI's Mot. 10-11, 16, 21-24.) During this time period, Garza additionally expressed interest to Gray about an exempt General Accounts Payable position. (Pl.'s Compl and Jury Demand ¶ 26.) Garza alleges Gray informed Garza she did not possess the requisite supervisory experience for the position, and Garza decided not to apply for it. (*Id*. at ¶ 27.)

### B. Garza's Leave Under the Family and Medical Leave Act

From October 23, 2007 to January 14, 2008, Garza took approved leave under the Family and Medical Leave Act ("FMLA"). (Pl.'s Compl. And Jury Demand ¶ 21.) While on FMLA leave, Garza alleges Gray contacted her repeatedly concerning department issues and Garza's expected return date. (*Id*. at ¶ 22.) Garza further alleges Gray's behavior towards Garza changed drastically

---

[3]Notably, Garza applied for the Manufacturing ERP Analyst position in May 2007, prior to receiving her accounting degree. (Pl.'s Compl and Jury Demand ¶¶ 9, 11.)

upon Garza's return, and Gray began monitoring Garza's work with increased scrutiny. (*Id*. at ¶¶ 23-24.)

**C. Garza's 2008 Performance Review**

Prior to 2008, Garza alleges she had always received good or excellent performance reviews. (*Id*. at ¶ 8.) However, in April 2008, Garza received an annual performance review reflecting issues concerning Garza's compliance with MKI's attendance policy. (*Id*. at ¶¶ 36-37.) Garza alleges the attendance issues reflected in the performance review stemmed from a retroactively applied attendance policy. (*Id*. at ¶ 38.)

Feeling she was being treated unfairly, Garza contacted an MKI human resources representative. (*Id*. at ¶ 39.) Upon meeting with the representative, Garza expressed her concerns that she was suffering discrimination based on her race and retaliation for taking FMLA leave. (*Id*.) Garza alleges her complaints were not taken seriously. (*Id*. at ¶ 40.) On May 19, 2008 Garza filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging national origin and race discrimination. (*Id*.) On June 2, 2008, Garza amended her charge to include retaliation and age discrimination. (*Id*. at ¶ 41.) Following her report of such concerns, the retaliatory behavior she was experiencing worsened to the point she felt compelled to resign her employment. (*Id*. at ¶¶ 42-44.) Garza resigned from MKI on September 16, 2008. (*Id*. at ¶ 45.)

**C. The Instant Action**

On February 2, 2009, Garza filed suit against MKI asserting claims for discrimination and retaliation under Title VII, Section 1981, and the Age Discrimination in Employment Act ("ADEA"). (*See generally* Pl.'s Compl. And Jury Demand.) Garza additionally asserted claims for violations of the FMLA. (*Id*.)

On March 19, 2010, MKI filed the instant Motion for Summary Judgment. Having considered the Parties' briefing and the relevant law, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

### A. Summary Judgment

Federal Rule of Civil Procedure 56(c) provides summary judgment is appropriate "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. However, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

### B. The *McDonnell Douglas* Burden Shifting Framework

In the instant action, Garza has asserted discrimination and retaliation claims under the FMLA, Title VII, Section 1981 and the ADEA. The Court employs the *McDonnell Douglas* burden shifting framework to analyze all such claims. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001) (applying the *McDonnell Douglas* framework to retaliation claims under the FMLA); *Grimes v. Tex. Dep't of Mental Health and Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (applying the *McDonnell Douglas* framework to discrimination claims under Title VII); *Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987) (applying the *McDonnell Douglas* framework to discrimination claims under Section 1981); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (applying the *McDonnell Douglas* framework to retaliation claims under Title VII); *Thomas v. Exxon, U.S.A.*, 943 F. Supp. 751, 762 (S.D. Tex. 1996) (applying the *McDonnell Douglas* framework to retaliation claims under Section 1981); *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998) (applying the *McDonnell Douglas* framework to discrimination claims under the ADEA); *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225 (5th Cir. 1996) (applying the *McDonnell Douglas* framework to retaliation claims under the ADEA).

Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Upon such a showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment decision. *Id*. If the defendant is able to

articulate such a reason, the burden accordingly shifts back to the plaintiff to show such reason to be merely a pretext for discrimination. *Id.* at 804-05.

C. **The Family and Medical Leave Act**

The FMLA was created to protect an employees' right to take leave to attend to the medical needs of himself/herself or a family member. *See* 29 U.S.C. § 2601(b)(2). As a means of providing such protection, the FMLA contains two distinct provisions. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). First, the FMLA protects the substantive rights of an employee taking leave under the act, including the right of an employee to return from leave to the same position or an equivalent position offering equivalent employment benefits, leave, pay and other terms and conditions. *See* 29 U.S.C. § 2614. Notably, *de minimis*, intangible changes to an employee's position or responsibilities upon their return from leave are not considered to violate this provision of the FMLA. *Smith v. East Baton Rouge Parish School Bd.*, 453 F.3d 650, 651 (5th Cir. 2006).

The second distinct provision of the FMLA prohibits an employer's discrimination or retaliation against an employee for exercising his/her rights under the FMLA. *See* 29 U.S.C. § 2615. Under the *McDonnell Douglas* framework described above, an employee can make a prima facie case of retaliation under the FMLA by showing "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt*, 277 F.3d at 768.

In the context of a prima facie case, an employee is deemed to have suffered an adverse employment action if a reasonable employee would have found the challenged action materially adverse and would have been dissuaded from making or supporting a charge of discrimination."

*McArdle v. Dell Prods. LP*, 293 F. App'x 331, 337 (5th Cir. 2008) (quoting *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Further, the temporal proximity between an employee's FMLA leave and any adverse employment action may be sufficient evidence of causation to withstand a motion for summary judgment. *Stephenson v. Nokia, Inc.*, No. 3:06-CV-2204-B, 2008 WL 2669492, at *6 (N.D. Tex. May 1, 2008).

### D. Title VII and Section 1981

Title VII protects employees against discrimination based upon their race. *See* 42 U.S.C. § 2000e-2. Specifically, Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." § 2000e-2(a)(1).

The language of Section 1981 provides "[a]ll persons within the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and the exactions of every kind, and to no other." 42 U.S.C. § 1981(a). Section 1981 pertains to racial discrimination in the making and enforcement of contracts, including employment contracts. *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1982). Thus, Section 1981 also provides a federal remedy against discrimination in employment on the basis of race. *Id.*

Under the *McDonell Douglas* burden shifting framework, a plaintiff may prove a prima facie case of discrimination under Title VII or Section 1981 by showing "(1) that she is a member of a protected class, (2) that she sought and was qualified for an available employment position, (3) that

she was rejected for the position; and (4) that the employer continued to seek applicants with the plaintiff's qualifications." *Grimes*, 102 F.3d at 140; *see Jatoi*, 807 F.2d at 219.

Title VII and Section 1981 further make it unlawful for an employer to retaliate against an employee for opposing any unlawful discrimination. *See* 42 U.S.C. § 2000e-3; 42 U.S.C. § 1981(b); *see also Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003) ("We hold that an employee's claim that he was subjected to retaliation because he complained of race discrimination is a cognizable claim under § 1981(b)."). To make a prima facie case of retaliation under Title VII or Section 1981, a plaintiff must show (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that a causal link existed between the protected activity and the adverse employment action. *Gee*, 289 F.3d at 345; *Thomas*, 943 F. Supp. at 762.

The term "adverse employment action" in the context of retaliation claims is interpreted to mean any action a reasonable employee would find materially adverse so as to discourage the making or supporting of a charge of discrimination. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68; *King v. La.*, 294 F. App'x 77, 84 (5th Cir. 2008). Further, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

**E. The Age Discrimination in Employment Act**

The ADEA provides that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. "A plaintiff may establish a prima facie case of age discrimination with respect to

demotion or a failure to promote by demonstrating that: 1) he was demoted or not promoted, as the case may be; 2) he was qualified for the position he occupied or sought; 3) he was within the protected class at the time of the demotion or failure to promote; and 4) either i) the position he occupied or sought was filled by someone outside the protected class; ii) the position he occupied or sought was filled by someone younger; or iii) he was otherwise demoted or not promoted because of his age." *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998).

The ADEA additionally protects employees from retaliation for opposing unlawful acts of age discrimination. *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225 (5th Cir. 1996); *see* 29 U.S.C. § 623. "A plaintiff establishes a prima facie case of retaliation under the ADEA by showing: (1) that he engaged in activity protected by the ADEA; (2) that there was an adverse employment action; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *Id.* at 1225-26. Notably, the Fifth Circuit analyzes whether an adverse employment decision has occurred as part of claims asserting discrimination and retaliation under the ADEA in the same manner it analyzes adverse employment decisions under Title VII. *Mitchell v. Snow*, 326 F. App'x 852, 854-55 (5th Cir. 2009).

**F. Constructive Discharge**

Typically, an employee's resignation does not constitute an adverse employment decision because it is a decision made of the employee's own accord. However, in the case at hand, Garza alleges her resignation constituted an adverse employment decision because it was a "constructive discharge." A constructive discharge occurs when an employer makes working conditions so intolerable that an employee feels compelled to resign. *Haley v. Alliance Compressor, LLC*, 391 F.3d 644, 649-50 (5th Cir. 2004) (discussing constructive discharge under the FMLA); *McCoy v. City of*

*Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (discussing constructive discharge under Title VII); *Boze v. Branstetter*, 912 F.2d 801 (5th Cir. 1990) (discussing constructive discharge under Section 1981); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) (discussing constructive discharge under the ADEA). "In determining whether an employer's actions constitute a constructive discharge, [the Court examines] the following relevant factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not." *McCoy*, 492 F.3d at 557.

## III.

## ANALYSIS

MKI has moved for summary judgment on each of Garza's claims under the FMLA, Title VII, Section 1981, and the ADEA. (*See generally* Def. Mary Kay, Inc.'s Br. In Supp. Of Its Mot. For Summ. J. ("MKI's Br.").) The Court will consider each issue in turn.

**A. The Family and Medical Leave Act Claims**

MKI argues it is entitled to summary judgment on Garza's claims under the FMLA. (*See generally* MKI's Br.) First, MKI contends that upon her return from FMLA leave, Garza was returned to essentially the same position she held before she left, and any minor differences in her work constituted *de minimus* changes. (MKI's Br. 19-22.) Thus, MKI contends Garza's substantive rights under the FMLA have not been affected. (*Id.*) MKI additionally argues the retaliatory actions alleged by Garza upon her return do not constitute adverse employment actions, nor were they severe enough for Garza's resignation to be considered a constructive discharge. (*Id.* at 22-24, 28-

30.) Further, MKI contends Garza can prove no link between such actions and her taking of FMLA leave. (*Id.* at 25-27.) As such, MKI argues Garza has failed to establish a prima facie case of retaliation under the FMLA. (*Id.*)

Garza responds that upon her return from her FMLA leave, 60% of her original job duties had been removed or changed. (Pl.'s Resp. 28-32.) Further, Garza contends she was subject to various forms of retaliatory behavior including reduction and reassignment of responsibilities, Gray's hostile attitude, Gray's increased scrutiny of Garza's work, and Gray's exclusion of Garza from mentoring opportunities. (*Id.* at 35.) In light of these actions, Garza contends the conditions of her workplace became so intolerable she felt compelled to end her employment, thereby rendering her resignation a constructive discharge. (*Id.* at 44-47.)

The Court begins its analysis by determining whether MKI is entitled to summary judgment as to Garza's claims for violations of her substantive rights under the FMLA. While the FMLA protects an employee's right to return to the same or equivalent position, *de minimus* changes to an employee's responsibilities do not violate the FMLA. *Smith*, 453 F.3d at 651. Garza has provided evidence that 60% of her original job duties had been removed or changed upon her return. (*See* App. To Pl.'s Resp. To Def.'s Mot. For Summ. J. ("Pl.'s App.")113.) The Court finds such changes, if found credible by a jury, could constitute more than mere *de minimus* changes and, as such, a material issue of fact remains as to whether MKI has violated the first provision of the FMLA.

Turning to the FMLA's second provision, the Court looks to whether Garza has established a prima facie case of retaliation. The Parties disagree as to whether Garza has adequately shown she suffered an adverse employment action, including whether her resignation constituted a constructive discharge. Garza has provided evidence, through her own testimony and the testimony of co-

workers, that she was badgered by supervisors, humiliated through the reduction of her responsibilities, overly scrutinized, treated in a hostile manner, and assigned tedious data-entry tasks. (*See* Pl.'s App. 58, 112, 114, 121.) The Court finds a reasonable employee could potentially find such actions materially adverse. The Court additionally notes such actions fall within several of the categories to be considered in determining whether a constructive discharge has occurred. *See McCoy*, 492 F.3d at 557 (noting the Court should look to factors including reduction in job responsibilities, reassignment to menial or degrading work, and badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation in determining whether a constructive discharge has occurred). Accordingly, the Court finds a material issue of fact remains as to whether Garza suffered an adverse employment action, including whether Garza's resignation constituted a constructive discharge.

The parties additionally disagree as to whether Garza has adequately shown the third element of her prima facie case. Garza has provided evidence that she was treated less favorably than those employees who did not request leave under the FMLA, and that the retaliatory treatment she experienced occurred in temporal proximity to her FMLA leave. (*See* Pl.'s App. 112-16.) As such, the Court finds material issues of fact remain as to the third element of Garza's prima facie case. *See Stephenson*, 2008 WL 2669492, at *6. Accordingly, the Court finds material issues of fact remain as to Garza's FMLA claims overall, and MKI is not entitled to summary judgment on such claims.

**B. Garza's Claims Under Title VII, Section 1981, and the ADEA[4]**

---

[4]The court will consider the claims under Title VII, Section 1981, and the ADEA together as the framework for analyzing such claims is the same. *See Mitchell*, 826 F. App'x at 854.

MKI additionally contends it is entitled to summary judgment on Garza's Title VII, Section 1981, and ADEA claims. MKI contends Garza was not qualified for any of the positions for which she applied due to her lack of accounting and supervisory experience and, thus, cannot establish her prima facie case of race and/or age discrimination. (MKI's Br. 5-17.) Further, MKI contends that its belief other individuals were better qualified for the positions constitutes a legitimate, nondiscriminatory reason for the challenged employment decisions. (*Id.* at 8-9, 10, 12-13, 14-17.) Finally, MKI argues the retaliatory actions alleged by Garza do not constitute adverse employment actions, could not be said to have resulted in a constructive discharge, and are not causally linked to Garza's reports of discrimination, thus Garza fails to assert a prima facie case of retaliation under Title VII, Section 1981, and the ADEA. (*Id.* at 22-24, 27-31.)

Garza contends she has adequately established her prima facie case of race and age discrimination because she was qualified for every position to which she applied. (Pl.'s Resp. 10-16, 27) Garza further contends MKI's proffered reason for the employment decisions is pretext based on the fact MKI diverged from their normal promotion policies and procedures, the falsity of the assertions that Garza was not qualified for the positions in question, and the existence of other instances in which MKI had discriminated based on race. (*Id.* at 8-27.) Finally, Garza contends MKI engaged in multiple retaliatory actions following Garza's opposition to the alleged race and age based discrimination including the issuance of a negative performance review for Garza's work, Gray's hostile treatment of Garza, Gray's increased scrutiny of Garza's work, Gray's accusations Garza had a negative attitude and was being disruptive, and Gray's instructions to other employees to avoid contact with Garza. (*Id.* at 41-42.) Such actions made Garza's work conditions so intolerable she felt compelled to resign. (*Id.* at 46-49.)

The Court begins its analysis by determining whether Garza has established a prima facie case of age and race discrimination. The Parties disagree as to whether Garza has shown she was qualified for the promotions to which she applied. Garza has submitted evidence of her 18 years of work experience with MKI, her degree in accounting, and her in depth understanding of the Travel Accounting Group's functions. (*See generally* Pl.'s App. 102-125.) In consideration of such evidence, the Court finds a material issue of fact remains as to whether Garza was qualified for each position.

Yet even if Garza is able to establish a prima facie case, MKI contends its proffered legitimate reason still entitles it to summary judgment. Thus, the Court next looks to whether Garza can raise a fact issue that MKI's proffered reason is pretextual. Garza has offered evidence that MKI deviated from its normal promotion policies and procedures, specifically with regard to its practice of promoting from within the company. (Pl.'s App. 47-48, 57-58, 102-125.) Garza additionally offers her own testimony describing her qualifications and experience as well as her past performance reviews to show MKI's justification that she was not qualified is false. (*Id.* at 102-125; Pl.'s Resp. 20-22 (citing App. To Pl.'s Mot. For Summ. J. 19, 22, 25, 27, 30, 37, 65-67, 72).) Finally, Garza has offered the testimony of other witnesses who observed discriminatory practices occurring at MKI. (Pl.'s App. 49-58.) The Court finds such evidence raises a material issue of fact as to whether MKI's proffered reason was in fact pretext to discrimination based on race. Accordingly, the Court finds material issues of fact remain as to Garza's claims of discrimination under Title VII, Section 1981, and the ADEA.

Turning to whether Garza has adequately established a prima face case of retaliation, the Parties disagree as to whether the retaliatory actions cited by Garza constitute adverse employment decisions and whether the element of causation has been adequately shown. Garza has provided

evidence she was badgered by supervisors, humiliated through the reduction of her responsibilities, overly scrutinized, and treated in a hostile manner to the point she felt compelled to resign. (*See* Pl.'s App. 117-123.) Garza has additionally provided evidence the retaliatory treatment she experienced occurred in close temporal proximity to her report of alleged race and age discrimination. (*See* Pl.'s App. 112-16.) In light of such evidence, the Court finds material issues of fact remain as to whether MKI retaliated against Garza in violation of Title VII, Section 1981, and the ADEA.[5][6] *See Swanson*, 110 F.3d at 1188. Accordingly, the Court finds MKI is not entitled to summary judgment on Garza's claims under Title VII, Section 1981, and the ADEA.

## IV.

## CONCLUSION

The Court finds material issues of fact remain as to Garza's claims under the FMLA, Title

---

[5]The Court notes MKI further argues Garza is not entitled to punitive damages under Title VII and Section 1981 because she has produced no evidence of "malice" or "reckless disregard" for Garza's rights. (MKI's Br. 32-33.) Further, MKI contends its good faith efforts to comply with federal law precludes an award of punitive damages. (*Id*. at 33-34.) "An employer is liable for punitive damages in a Title VII action if (1) its agent is employed in a position of managerial capacity, (2) the agent acts within the scope of employment, and (3) the agent acts with malice or reckless indifference towards the federally protected rights of the plaintiff." *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476-77 (5th Cir. 2002). However, the agents actions will not be imputed to the employer if the employer makes a good faith effort to comply with Title VII. *Id*. Based upon the evidence advanced in support of and against Garza's claims under Title VII and Section 1981, the Court finds material issues of fact remain as to whether Garza is entitled to punitive damages.

[6]MKI additionally contends its discovery of "after-acquired evidence" precludes any recovery by Garza of front pay and/or reinstatement. (MKI's Br. 31-32.) Specifically, MKI points to its discovery Garza collected and removed confidential documents from MKI. (*Id*.) In response, Garza presents evidence MKI has never terminated an employee for such behavior previously. (*See* Pl.'s App. 35.) "Where an employer seeks to rely on after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employer in fact would have been terminated on those grounds alone if the employer had known of it at the time of discharge." *Smith v. Berry Co.*, 165 F.3d 390, 395 (5th Cir. 1999) (quoting *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362-63 (1995)). Thus, the Court finds a material issue of fact remains as to MKI's affirmative defense of after-acquired evidence.

VII, Section 1981, and the ADEA. Accordingly, the Court finds MKI's Motion for Summary Judgment should be and hereby is **DENIED**[7] (doc. 49).

SO ORDERED.

DATED August 17, 2010

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[7] In conjunction with this finding, the Court finds Plaintiff's Motion to Strike Defendant's Summary Judgment Evidence and Brief in Support (doc. 65) should be and hereby is **DENIED as moot** because the evidence as proffered fails to benefit MKI's Motion for Summary Judgment.